IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
: CHAPTER 13
GEORGE E. LAMPMAN, and :
ARLENE J. LAMPMAN :
: CASE NO. 1:09-bk-09623-RNO
:
Debtor :
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CHARLES J. DEHART, III :
UNITED STATES TRUSTEE :
:
Movant :
:
v. :
:
ARLENE J. LAMPMAN :
:
Respondent :

# OPINION[1]

Before the Court is the Chapter 13 Trustee's ("Trustee") Motion to Reinstate Case ("Motion") of Arlene Lampman ("Debtor"). The Trustee brings the Motion on the grounds of alleged bad-faith conduct on the part of the Debtor during the pendency of her case. For the reasons stated herein, the Motion is denied.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II. FACTS AND PROCEDURAL HISTORY

George and Arlene Lampman filed their voluntary petition for Chapter 13 relief on December 14, 2009. Three years later, on December 13, 2012, they filed a Motion to

---

[1] Drafted with the assistance of Joseph C. Barsalona II, Esq., Law Clerk.

Withdraw/Dismiss Bankruptcy Case. At that point in time, as the parties stipulated, the Lampmans had completed all of their Chapter 13 payments. Because this was their first bankruptcy case and it had not been converted from another case, on December 14, 2012, the case was dismissed pursuant to 11 U.S.C. § 1307(b).[2]

The Trustee filed the Motion on January 7, 2013. In it, he seeks to reinstate the case only as to Arlene Lampman. Trustee's Mot. to Reinstate ¶ 2. The Trustee avers that the Debtor owns real estate and is a beneficiary under a decedent's estate. *Id.* It is alleged that these property interests were not disclosed to the Court during the pendency of the case. *Id.* at ¶¶ 3-5. He requests reinstatement to pursue these alleged assets and to generally discharge his duties as Trustee. *Id.* at ¶¶ 5, 9. Finally, the Trustee stated that the Debtor did not object to the relief requested in the Motion and thus supported reinstatement of the case. *Id.* at ¶ 10.

The Debtor's Answer to the Motion was filed on March 4, 2013. In her Answer, the Debtor denies that the alleged real estate was not disclosed to the Court, but instead was stated on an Amended Schedule A. Debtor's Answer to Trustee's Mot. to Reinstate ¶ 3. She also states that she learned of the alleged decedent's estate settlement after her Chapter 13 payments were paid in full on August 30, 2012. *Id.* at ¶ 4. Contrary to the statement in the Motion, the Debtor objects to reinstatement of her case and instead wishes to "deal with her creditors directly." *Id.* at ¶ 10.

At a hearing on May 1, 2013, the Trustee attempted to present testimony to support his claim that the Debtor was acting in "bad faith" during the pendency of the Chapter 13 case. That

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

request was denied on the basis that the question at bar is a threshold legal issue which should be decided prior to an evidentiary hearing. However, under Federal Rule of Evidence 201, I did take judicial notice of all the documents on the docket. Looking at the docket, the Amended Schedule A, mentioned by both parties, was filed on November 5, 2012. The one listed property, 119 North Market Street, is accompanied by this note: "This property was in extremely poor condition at time of filing. Efforts to sell, using Exit Realty, resulted in one offer of $65,000, not enough to pay off mortgage." Debtor's Am. Schedule A.

Although oral testimony was not allowed, the parties also stipulated to a number of facts at the hearing. First, the Debtor did own the 119 North Market Street property at the time of filing, but she did not list it in her Schedules. After notification from the Trustee, the Debtor filed the Amended Schedule A – Real Property, mentioned above, and an Amended Schedule D – Creditors Holding Secured Claims. Second, the Lampmans paid off their base plan on August 30, 2012. Two months afterward, the Debtor received notification that she is a beneficiary of an unknown amount from an estate. Finally, the will which names the Debtor as a beneficiary was filed before she made the final payment on the Lampmans' Chapter 13 plan. To date, the Debtor has still not received "one penny" from the decedent's estate.

The Trustee's Brief in Support of the Motion to Reinstate was filed prior to the hearing, on March 8, 2013, and the Debtor's reply brief was filed four days later. This case is now ripe for decision.

## III. DISCUSSION

The issue before me rests on one specific legal question: does bad faith conduct alleged by a party in interest *ex post* dismissal constitute grounds to reinstate a debtor involuntarily into a

3

Chapter 13 case? I hold this question must be answered in the negative for three reasons: (1) alleged bad faith conduct of which the trustee is cognizant during the pendency of the case does not provide grounds to vacate the dismissal order; (2) remedies for the allegedly wronged creditors exist without the need for reinstatement; and, (3) the Code forbids a debtor to be involuntarily placed in a Chapter 13 case.

      A.      **The Procedural Posture of the Case Disallows the Court to Consider Bad Faith at this Stage**

Procedural posture is the dispositive issue in this case. The Trustee's allegations are not brought in the form of a motion to dismiss or a motion to convert to another Chapter. Instead, the averments come on a motion to reinstate the case, where the burden is much higher on the moving party, especially when the movant is not the debtor. Furthermore, the Rule 60 standard, explained more fully below, is independent and isolated from the bad-faith inquiry that is the main focus in the dismissal and conversion contexts. Thus, a bad-faith analysis consistent with *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), is inapplicable to the instant case.

           i.      **The Exacting Standard of Federal Rule of Civil Procedure 60 Applies**

The Bankruptcy Code does not contain a provision governing reinstatement of Title 11 cases. Instead, our Circuit and sister Circuits treat motions to reinstate as a request to vacate the order of dismissal. *See, e.g.*, *Cole v. Household Fin. (In re Cole)*, 382 B.R. 20, 24-25 (Bankr. E.D.N.Y. 2008) (a motion to reinstate procedurally seeks relief from the order dismissing the case); *In re Searcy*, 313 B.R. 439, 442 (Bankr. W.D. Ark. 2004) ("[T]he only effect a motion to reinstate can have in a case is to vacate the order of dismissal . . . ."); *Diviney v. NationsBank of*

4

*Texas (In re Diviney)*, 211 B.R. 951, 962 (Bankr. N.D. Okla. 1997) (responding to an argument that a reinstatement order did not vacate a dismissal order, the court stated "[a]lthough couched as a motion to reinstate, the motion can only be considered a motion to vacate the [d]ismissal [o]rder"); *France v. Lewis & Coulter, Inc. (In re Lewis & Coulter, Inc.)*, 159 B.R. 188, 191 (Bankr. W.D. Pa. 1993) (motion to reinstate Chapter 11 case "should be construed as a motion to vacate the order" dismissing the case). Motions to vacate an order of dismissal are governed by Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9024, which in turn incorporates Federal Rule of Civil Procedure ("F.R.C.P.") 60. Thus, the rules and case law of F.R.C.P. 60 apply to the instant Motion.

"The remedy provided by Rule 60(b) is extraordinary, and special circumstances must justify granting relief under it." *Moolenaar v. Gov't of Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987) (citing *Page v. Schweiker*, 786 F.2d 150, 158 (3d Cir. 1986) (Garth, J., concurring)) (internal quotations omitted); *Rastelli Bros., Inc. v. Neth. Ins. Co.*, 68 F.Supp.2d 451, 454 (D.N.J. 1999); *Coltec Indus., Inc. v. Hobgood*, 184 F.R.D. 60, 63 (W.D. Pa. 1999). Indeed, the party "who seeks such extraordinary relief from a final judgment bears a heavy burden." *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967).

With this binding standard in mind, I now turn to the language of the rule. Rule 60(b) provides five specific grounds and one catch-all provision for relief from a "final judgment, order or proceeding":

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

5

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)–(6). The specific grounds listed in sections (b)(1)-(5) are mutually exclusive from the broader, "any other reason" language of section (b)(6). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988). Thus, the reasons justifying relief under (b)(1)-(5) cannot be the basis for relief under (b)(6). *Hechinger Liquidation Trust v. Spectrum Grp., Inc. (In re Hechinger Inv. Co. of Delaware, Inc.)*, 309 B.R. 706, 709 (Bankr. D. Del. 2004) (citing *Murray v. Ford Motor Co.*, 770 F.2d 461, 463 (5th Cir. 1985)).

Looking at the Motion, the Answer, and both briefs, none of the six grounds were specifically pleaded. In prior cases where movants failed to plead specific Rule 60(b) grounds, courts have inferred which grounds were and were not intended to be pleaded. *See, e.g.*, *John v. Hogan*, No. 1:CV-06-2197, 2008 WL 520093, at *2 (M.D. Pa. Feb. 26, 2008) (treating a motion to reopen as a Rule 60(b)(1) motion based on the facts and circumstances); *Hechinger*, 309 B.R. at 709 (where movant did not specify which grounds it relied on, the court looked to the statements in the motion to exclude "fraud" under Rule (b)(3)). While at least one court has taken the view that failing to allege any of the specific grounds in Rule 60(b)(1)-(5) renders them inapplicable, *In re King*, 214 B.R. 334, 337 (Bankr. W.D. Tenn. 1997), I will instead follow my colleagues from the Third Circuit and infer grounds based upon the statements in the papers.

6

First, subsections (1), (4), and (5) are facially inapplicable. Rule 60(b)(1) is irrelevant because no "mistake, inadvertence, surprise, or excusable neglect" led to the Trustee's Motion; it appears that all filings by both parties were timely and volitional. Similarly, both (b)(4) and (5) cannot be inferred because the facts and pleadings do not indicate (i) the dismissal order is "void" or (ii) any of the unique circumstances contemplated by (b)(6).

Second, the case cannot be reinstated on subsection (3) grounds because the Trustee failed to meet his burden under the rule. Rule 60(b)(3) permits a court to vacate a judgment due to "fraud . . ., misrepresentation, or other misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Unlike the other grounds, which only require a showing by a preponderance of the evidence, subsection (b)(3) requires the moving party to show the party engaged in fraud or other misconduct by clear and convincing evidence. *Floorgraphics Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 434 F. App'x 109, 111 (3d Cir. 2011); *Brown v. Pa. R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960). Furthermore, the alleged fraud must "substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed *at trial*." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)) (emphasis added). In other words, Rule 60(b)(3) relief is granted where the judgment was obtained by fraud; it does not apply where general allegations of fraud exist. *See Zurich*, 426 F.3d at 1290 ("Subsection (b)(3) is aimed at judgments which were unfairly obtained, not at those which are factually incorrect . . . .") (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)) (internal quotations omitted).

7

Case 1:09-bk-09623-RNO    Doc 49    Filed 06/21/13    Entered 06/21/13 14:20:09    Desc
Main Document    Page 7 of 13

Here, the Debtor did not obtain the Order dismissing her case by fraudulent means. She filed the Motion to Dismiss on December 13, 2012, without challenge as is provided by the Code. Additionally, it is stipulated that the Trustee was well aware of both the real estate and potential beneficiary payment before the case was dismissed, allowing him ample time to take appropriate action. Instead, the Trustee took no action at that time and the case was dismissed as a matter of right. Thus, the Debtor did not obtain the judgment of dismissal by fraud or other misconduct that may be afforded Rule 60(b)(3) relief.

Third, I find that the two property interests allegedly hidden from the Trustee cannot be deemed "newly discovered evidence" necessary to apply subsection (b)(2). This part of the rule requires that the new evidence "(1) be material and not merely cumulative, (2) *could not have been discovered before trial through the exercise of reasonable diligence* and (3) would probably have changed the outcome of the trial. Any party requesting such relief 'bears a heavy burden.' " *Floorgraphics*, 434 F. App'x at 111 (citing *Compass Tech., Inc. v. Tseng Labs., Inc.,* 71 F.3d 1125, 1130 (3d Cir.1995)) (emphasis added).

The uncovering of the real estate interest and inheritance is not "newly discovered evidence" because the Trustee had actual knowledge of their existence in September 2012, three months before the case was dismissed. In fact, the Debtor filed amended schedules listing the real estate after the Trustee raised the issue in a letter to Debtor's counsel on October 22, 2012. If the Trustee knew about the interests then, he could, and should, have acted on that information at that point. Because the property interests were discovered well before the dismissal of the case, their existence does not fit the parameters of "newly discovered evidence" under the rule.

8

Finally, the case should not be reinstated pursuant to Rule 60(b)(6) because the Trustee has not presented "extraordinary circumstances" to justify relief. Under this subsection, the Trustee had the burden of showing that "without relief from the judgment, an extreme and unexpected hardship will result." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (quoting *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)). Because the real estate interest was filed on amended schedules and the inheritance interest remains unknown and unpaid, I find that no extreme or unexpected hardship will result from the Debtor's case remaining dismissed. Thus, there exist no "extraordinary circumstances" in this case to warrant reinstatement pursuant to Rule 60(b)(6).

### ii. A *Marrama* Analysis Is Inapplicable

In his brief and during oral argument, the Trustee urged the Court to follow the reasoning in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), to reinstate the Debtor's case and hold that she did not have the "absolute right to dismiss" her case under § 1307(b). I disagree. Because this action comes on a Motion to Reinstate, and not on a Motion to Dismiss or Convert, I find *Marrama* and its progeny inapplicable. Furthermore, I find it is inappropriate in the context of this case to decide whether a debtor has an absolute right to dismissal.

In *Marrama*, the Supreme Court held that a debtor who partakes in bad-faith conduct during the course of his Chapter 7 case does not have the absolute right to convert or dismiss pursuant to 11 U.S.C. § 706(a). 549 U.S. at 371-76. Since the debtor concealed assets, the Court reasoned such action conflicted with § 706(d)'s limitation on conversion being available only to those "who may be a debtor [under] . . . chapter [13]." *Id.* at 372. The Court also found the word

9

"may" in § 706(a) provides discretion to a court in allowing conversion; it does not provide the debtor with an absolute right to covert or dismiss. *Id.* at 370.

At the outset, the holding in *Marrama* only applies to sections 706(a), 706(d), and 1307(c). Indeed, in the second paragraph of the opinion, the Court introduces the issue as such:

> An issue that has arisen with disturbing frequency is whether a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief. The issue may arise **[1]** at the outset of a Chapter 13 case in response to a motion by creditors or by the United States trustee **either to dismiss the case or to convert it** to Chapter 7, see § 1307(c). It also may arise **[2]** in a Chapter 7 case when a debtor files a motion under § 706(a) **to convert** to Chapter 13.

*Id.* at 367-68 (emphasis and numbering added) (internal citations omitted). Notwithstanding this qualifying language, courts in other circuits have expanded *Marrama*'s holding to condition a debtor's right to dismiss under § 1307(b). *See In re Jacobsen*, 609 F.3d 647, 660-62 (5th Cir. 2010) (holding the § 1307(b) right of dismissal is conditioned on a bankruptcy court's finding lack of bad-faith conduct); *In re Rosson*, 545 F.3d 764, 772-74 (9th Cir. 2008) (same). This expanded reading has resulted in a split of opinion between lower courts: those that hold the absolute right exists and those that hold the right to be conditional. *Compare Procel v. U.S. Trustee (In re Procel)*, 467 B.R. 297 (S.D.N.Y. 2012) (absolute right exists), *and In re Williams*, 435 B.R. 552 (Bankr. N.D. Ill. 2010) (same), *with Taylor v. Winnecour (In re Taylor)*, 462 B.R. 527 (Bankr. W.D. Pa. 2011) (debtor does not have an absolute right to dismiss under § 1307(b)), *and In re Caola*, 422 B.R. 13 (Bankr. D.N.J. 2010) (same).

Judicial restraint prohibits me from entering the fray on this issue for one basic reason: the instant case does not arise under the context of a motion to convert or a motion to dismiss.

Indeed, every case cited above, and those that can be cited on this issue, fall within the context of conversion or dismissal. *See, e.g.*, *Jacobsen*, 609 F.3d at 650 (pending motions to convert and dismiss); *Rosson*, 545 F.3d at 767 (conversion filed before dismissal); *Procel*, 467 B.R. at 299 (motion to dismiss preceded motion to convert); *Williams*, 435 B.R. at 553 (pending motions to dismiss and convert); *Taylor*, 462 B.R. at 528 (contested motion to dismiss); *Caola*, 422 B.R. at 14 (pending motions to dismiss and convert). I conclude that the Code permits factual allegations of bad faith to be considered at the time of conversion *or* dismissal, but *not* after the case is dismissed.

Unlike those cases, here the issue of dismissal is a *fait accompli*, the case having been terminated on December 14, 2012. The Trustee did not object to the Motion to Dismiss, nor did he file a motion to convert when his office came upon the putative bad-faith evidence. Instead, he chose to move to reinstate the case where the burden is much heavier and where an expanded *Marrama* analysis is inapplicable. Therefore, this case is not a vehicle to analyze the issue of whether or not a debtor has an absolute right to dismiss under § 1307(b), and such issues do not factor into the disposition of the pending Motion.

### B. Creditors Have the Option of an Involuntary Chapter 7 or 11 Petition

Assuming *arguendo* that the Debtor did in fact act in bad faith, there is another procedure by which her creditors could bring her back within the jurisdiction of the Court: an involuntary petition pursuant to 11 U.S.C. § 303. Under this provision, "three or more entities" could potentially file against the Debtor to prosecute any allegations of bad-faith conduct. 11 U.S.C. § 303(b). This would quell the Trustee's concerns over the best interests of creditors and falls in line with the Trustee's proposal of an immediate Chapter 7 conversion after Chapter 13

reinstatement.  *See* Trustee's Br. 3 ("[The Debtor] would have the ability to convert to Chapter 7 if she decided that chapter of the bankruptcy code better suited her.").

At the hearing on May 1, 2013, the Trustee voiced his opinion that an involuntary petition under § 303 would create an unwanted "race to the courthouse" between creditors.  I disagree.  The same automatic stay and claims-filing procedures would initiate upon filing, and an interim Chapter 7 trustee could be assigned.  11 U.S.C. § 303(g); *Matter of Beaucrest Realty Assocs.*, 4 B.R. 164, 165 (Bankr. E.D.N.Y. 1980).  The Code effectively prohibits petitioning creditors from holding any advantage over any other bona fide claimants.  Because such safeguards exist, an involuntary petition is an apparent solution to any potential bad-faith claims put forth by the Trustee and supportive of my decision to deny reinstatement.

### C. An Involuntary Chapter 13 is Not Permitted

Debtors may voluntarily file for Chapter 13 protection, but they cannot be compelled to do so.  Because the Trustee's Motion seeks to do just that, it must be denied.

In 1977, Congress stated explicitly that a mandatory or involuntary Chapter 13 would violate the Thirteenth Amendment's ban on involuntary servitude.  *See* H.R. Rep. No. 95-595, at 120 (1977)  ("As under current law, Chapter 13 is completely voluntary.  This committee firmly rejected the idea of mandatory or involuntary Chapter XIII in the 90th Congress.  The Thirteenth Amendment prohibits involuntary servitude.").  Many bankruptcy courts have echoed that sentiment throughout the years.  *See, e.g.*, *In re Gordon*, 465 B.R. 683, 691 (Bankr. N.D. Ga. 2012) (citing the House Report); *U.S. Trustee v. Duncan (In re Duncan)*, 201 B.R. 889, 901 (Bankr. W.D. Pa. 1996) ("If [debtor] wishes to proceed under Chapter 13 . . ., he will only do so willingly and of his own volition."); *In re Raikes*, 22 B.R. 837, 841 (Bankr. D.N.J. 1982) ("This

12

Case 1:09-bk-09623-RNO    Doc 49    Filed 06/21/13    Entered 06/21/13 14:20:09    Desc
Main Document      Page 12 of 13

court cannot compel a debtor to continue the estate or file under the provisions of Chapter 13 whereby creditors would possibly be paid some sum of money on their debts as it would smack of a violation of the 13th Amendment to the United States Constitution.").

I concur with this reasoning and find it applicable to the instant case. If the case is reinstated, the Debtor would be forced back into Chapter 13 and under the jurisdiction of this Court. I wonder—but need not decide—what would happen next? Would the Trustee move to compel the Debtor to file a new plan? Would the Trustee propose his own plan? The law does not obligate an unwilling debtor to submit to such conditions, and the facts here do not justify an exception. Thus, the Chapter 13 case cannot be reinstated involuntarily, and the Motion seeking to do so is denied.

## IV. CONCLUSION

Consistent with the foregoing reasoning, Trustee's Motion to Reinstate Case is denied. An Order will be entered consistent with this Opinion.

By the Court,

*[signature]*

Date: June 21, 2013

Robert N. Opel, II, Bankruptcy Judge

(BI)